KAMM v. REES et al. †

(Circuit Court of Appeals, Ninth Circuit. February 14, 1910.)

No. 1,762.

**1. SALES (§§ 355, 363*)—ACTION FOR PRICE—ISSUES—QUESTIONS FOR JURY.**

During several years defendant had from time to time purchased steamboat machinery from plaintiffs which at his request was shipped to different transportation companies with which he was connected, but in all cases the contracts and payments were made by him personally. He ordered from plaintiffs machinery for a new steamboat stating that he and others were about to organize a company. He personally superintended the building of a part of the machinery and made payments thereon, receipts for a part of which were at his request made to the company which had in the meantime been formed, and by his direction the machinery was billed and shipped to the company, and the bills therefor made in the name of the company were sent to him. All letters and telegrams to plaintiffs until some months after the machinery was delivered were signed by him in his own name. Full payment not having been made plaintiffs brought action against him to recover the balance due, which he defended on the' ground that the sale had been made to the company and not to him. Plaintiffs testified that they had no dealings with the company, but contracted with defendant individually. *Held*, that there was no issue in the case as to agency or plaintiffs' right of election, but the question was as to whether the contract was made with and credit given to defendant which was one for the jury.

[Ed. Note.—For other cases, see Sales, Dec. Dig. §§ 355, 363.*]

**2. CORPORATIONS (§ 174*)—STOCKHOLDERS—NATURE OF RELATION.**

A stockholder is not in all relations in privity with his corporation but only as to rights arising out of his contracts of subscription for stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652; Dec. Dig. § 174.*]

**3. JUDGMENT (§ 627*)—JUDGMENT AS BAR TO SECOND ACTION—PERSONS WHO MAY PLEAD BAR.**

In order that a defendant may plead in bar a judgment in a prior action, he must have been a party to, or represented in, the former action as an actual defendant, and in the same attitude as an adversary party toward the subject of the litigation as that in which he appears in the second action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1141–1143; Dec. Dig. § 627.*]

**4. ESTOPPEL (§ 68*)—CLAIM OR POSITION IN JUDICIAL PROCEEDING—JUDGMENT AS BAR—ESTOPPEL.**

A stockholder who bought property on his own credit for the use of the corporation, and afterward for his own protection procured the creditor to assign the claim to a third person, who at his instance brought suit thereon and obtained a judgment against the corporation, is estopped to plead such judgment in bar of an action by the creditor against him to recover the debt.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

**5. EVIDENCE (§ 241*)—DECLARATIONS—STATEMENTS BY AGENT.**

Where there is independent evidence of an agency declarations of the agent made in carrying out the purpose of the agency and upon which a second party acted are admissible against the principal.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 241.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 9, 1910.

**6. SALES (§ 358\*)—EVIDENCE—DOCUMENTS—CORROBORATIVE EVIDENCE.**

Where a question in issue was whether defendant personally contracted for the building of certain machinery by plaintiffs as testified by them, or whether the contract was made by a corporation of which he was a stockholder and officer, plans of the machinery used in its construction and made in plaintiffs' shop, having defendant's name thereon and shown to have been seen by defendant a number of times while he was superintending the work, were admissible in evidence on such issue.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 358.\*]

**7. SALES (§ 358\*)—ACTION FOR PRICE OF GOODS MADE UNDER CONTRACT—EVIDENCE—BOOK ENTRIES.**

The fact that a manufacturer of goods charges the same to, or enters payments thereon to the credit of the person to whom they are delivered is prima facie evidence to show for whom the goods were manufactured and to whom credit was given, but is not conclusive, and the presumption may be overcome by proof that the goods were in fact made for, and the credit given to, another, and to that end other entries in the books made while the work was being done; showing that all items recorded relating to the work were in the name of such other person are admissible for the purpose of corroborating direct testimony that the work was done for him.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 358.\*]

In Error to the Circuit Court of the United States for the District of Oregon.

Action by Mary Rees, Thomas M. Rees, James H. Rees, and William M. Rees, as trustees, against Jacob Kamm. Judgment for plaintiffs, and defendant brings error. Affirmed.

The defendants in error, as plaintiffs, recovered a judgment against the plaintiff in error, who was the defendant therein. For convenience, the parties will be designated herein as they were in the court below. For several years prior to the year 1889 the plaintiffs had been engaged in the business of manufacturing steam engines, boilers, and steamboat machinery at Pittsburgh. The defendant during that period was engaged in the business of transportation by steamboat on rivers in Oregon, Idaho, and Washington, and he had contracted with and purchased from the plaintiffs engines, boilers, and steamboat machinery, in all of which transactions he had caused the machinery and supplies to be charged against the particular transportation company by which they were to be used, but the evidence is, and it is not denied by him, that the credit was extended to him in all of these transactions, and that he always made the payments that were made thereon. On December 3, 1889, he telegraphed to the plaintiffs, inquiring how soon after receipt of an order they could deliver certain described stern-wheel engines, to which he received an answer on the following day. This exchange of messages was followed by a number of letters and telegrams between the parties, in all of which the defendant appears in his individual capacity and not as representing a corporation, although in his letter of December 4, 1889, he made reference to the fact that several steamboat men and himself had a steamboat enterprise under consideration, and proposed to build a steamboat for use on the Snake river, and in his letter of December 21st, he wrote that the corporation would be filed and that the company would commence to build a boat, that the capital stock had all been subscribed, that he had taken one-fourth thereof, and he expected that he would be the president and his son the secretary of the corporation. On January 15, 1890, he telegraphed the plaintiffs, over his own name, accepting their proposition, and directing them to commence immediately. During January and February, 1890, further correspondence followed, concerning details and changes in construction of the engines and boiler. On February 17, 1890, the defendant telegraphed to the plaintiffs: "I will send you a draft for $1,000 to apply on the contract in a few days." Four days later the draft was sent. The letter which accom-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

panied it contains the request that the payment be applied on the contract for the 16"x7' engines for the Snake River Transportation Company, and adds, "and send me receipt for same. Yours very truly, Jacob Kamm." This is the first mention of the Snake River Transportation Company in the correspondence. Its articles of incorporation were filed on February 20, 1890, and its board of directors and officers were elected five days later. On March 28, 1890, the defendant went to Pittsburgh, where he remained about three weeks superintending the construction of the engines and boiler. Soon after his arrival he gave the plaintiffs an indorsed draft issued by a life insurance company in favor of his wife for $3,300, of which $3,000 was credited on account of the contract. At the time of the payment he requested that the receipt be made as for a payment by the Snake River Transportation Company. He testified: "I believe they finally made it out. There might have been some hemming and hawing about it." The testimony of the plaintiffs was that he assigned as his reason for the request that he wished to keep this account separate from his other accounts, and that they assented thereto only on the expressed understanding that their contract was with him only, and that they looked to him for the payment. On May 17 and 27, 1890, the engines, boilers, capstan, and machinery and supplies were shipped by the plaintiffs as instructed by the defendant, to the Snake River Transportation Company, at Bridgeport, Idaho. The plaintiffs testified that the boiler and machinery so consigned had been marked in the shop "Kamm" or "Jacob Kamm," and that the mark "Snake River Transportation Company" appeared only on the manifest and shipping book. All the bills for the machinery so furnished, and labor for making the drawings, and bills for freight were made out to the Snake River Transportation Company, but were sent to the defendant at his request at Portland, Or. All letters and telegrams sent by the defendant to the plaintiffs up to the date of October 15, 1890, were signed "Jacob Kamm," and all letters and telegrams of the plaintiffs were addressed to Jacob Kamm, but on October 15, 1890, the defendant affixed the word "Prest." to his signature in a letter to the plaintiffs, in which he said: "It was our attention to have made you a remittance soon after the boat commenced running, but owing to the delay, our company has instructed me to ask you for further time in making our payments."

On June 16, 1891, James Rees, one of the plaintiffs, wrote the defendant at Portland, Or., addressing him in his individual capacity, saying: "I am much in need of some ready cash just now, and would like you to arrange for a settlement, or send me a draft." A month later the defendant answered that arrangements had been made for a general meeting of the stockholders, and that the plaintiffs' account would be one of the matters brought up for consideration by the Board. The meeting took place on August 15, 1891, but in the meantime actions had been begun against the Snake River Transportation Company on debts owing from it, and an attachment and an execution had been levied on the Norma, the company's boat. On August 21st, another action was commenced, with an attachment on the boat. On that date the defendant as president wrote to the plaintiffs, reporting the action of the stockholders at the annual meeting, stating that the boat had cost $30,000, and that the indebtedness of the corporation was $10,000 or $11,000, and proposing that the plaintiff take stock to the amount of $5,000 in a proposed reorganization of the company, that sum to be credited on their claim. On August 27th, Thos. M. Rees, for the plaintiffs, wrote declining the proposition, but suggesting to the defendant that he take notes of the corporation for the amount of the plaintiffs' claim and secure the same by his indorsement. Soon thereafter the defendant consulted C. W. Miller, an attorney in Portland with reference to the claims against the boat, and Miller advised him to have all the claims assigned to one person, and to have a suit brought against the corporation in the name of that person. In carrying out this plan, the defendant gave the letter from Thos. M. Rees of date August 27, 1899, to one Dugald McMurchey, an attorney, and McMurchey went to Pittsburgh and had an interview with the plaintiffs. In that interview, according to the testimony of the plaintiffs, McMurchey stated that he had been sent there by the defendant as his attorney, that the defendant was having some trouble with his partners, and that he wished the plaintiffs to make an assignment of their ac-

count to him so that he could protect himself in a settlement with his partners, and that after McMurchey had stated that if the plaintiffs would make such an assignment he would advise the defendant as his attorney that he was morally and legally responsible for the account, the plaintiffs made the assignment to the defendant, and afterwards on the same day, at the instance of McMurchey, they made a second assignment to D. A. Shindler on the representation of McMurchey that it might be needed to protect the defendant's interests. McMurchey returned with these assignments to Portland. On September 14, after McMurchey had left Pittsburgh, Thomas M. Rees, one of the plaintiffs, wrote to the defendant a letter, in which, among other things, he stated: "We * * * finally agreed to assign our claims as we considered that you are the party whom we look to, as we did not know the Snake River Transportation Company, when we contracted. We thought it was one of your boat enterprises, and we made the assignment to you and also to D. A. Shindler, whom your attorney said you might want to use the name of to enter proceedings. * * * We desire to assist you in any manner possible not detrimental to the estate, in any trouble you may have with your company and partners." On September 23d, the defendant answered the letter of Thomas M. Rees, returning therewith the assignment which had been made to himself, and stating: "I am retaining the assignment to Mr. Shindler, which we will probably have to use some time this week in order to protect your firm. I know Mr. Shindler, and the assignment in his hands is perfectly safe. I am personally anxious if possible to protect your interest, but do not want to assume any responsibility outside of my position as president of the company." About this time the defendant, accompanied by McMurchey, went to the store of the G. Shindler Furniture Company at Portland, where he introduced McMurchey to D. A. Shindler. Shindler had been acquainted with the defendant many years and his firm had done an extensive business in supplying furniture for the defendant's boats. It had a claim of $343.70 for furniture supplied to the Norma. The defendant asked Shindler if he would be willing to take the assigned accounts, together with his own account, and bring suit thereon against the Snake River Transportation Company, and Shindler consented to do so. The defendant asked him to recommend a lawyer, and Shindler referred him to the firm of Miller & Miller. At the request of the defendant, Shindler went with him to the office of Miller & Miller, and signed the complaint and an action was begun thereon on the assigned claims of the plaintiffs herein, the G. Shindler Furniture Company claim and two others. The defendant employed and paid C. W. Miller for his services in the action, and directed the conduct of the case, and the plaintiffs herein had nothing to do therewith. On September 25, 1891, the boat was attached in that action, subject to the prior levies and attachments. On the following day it was sold at public auction for $4,000 on a judgment rendered in one of the prior actions. A brother-in-law of the defendant was the purchaser. Subsequently the defendant directed F. C. Miller, the cashier of the United States National Bank, of which the defendant was vice president, to advance the $4,000 for the purchase of the boat, and to take the certificate of sale in his name, saying that he would be responsible to Miller therefor. The defendant paid the $4,000 and took the boat as his individual property. He subsequently paid in person the claim of the G. Shindler Furniture Company in full.

On October 29, 1891, James Rees wrote to the defendant, referring to the assignment as having been made to protect the defendant, and his interest in the company, and alluding to the fact that the defendant had intimated in his letter of September 23, 1891, that he did not consider himself responsible for the payment of the plaintiffs' bill, and saying: "Let us understand this matter in plain English, so that we may know exactly the situation and enable us to act. We do not for one moment think, from our understanding with your attorney, Mr. McMurchey, that you would refuse to be responsible for the machinery, etc., which you bought in your name and other merchandise which you personally bought through our house, and received the discounts that was allowed the trade. * * * You know full well that we did not sell to you as president of the company." The defendant made no answer to that letter. On January 6th, James Rees wrote another letter to the

defendant, directing attention to his letter of October 29th, and to the fact that it remained unanswered. On January 21st, the defendant wrote the plaintiffs a letter in which he denied that McMurchey had been his attorney, and denied his liability for the debt, and stated that he would be willing to pay upon their claim the sum of $2,500. He also stated in the letter: "The first letter I wrote you advised you that this enterprise was to be undertaken by an incorporated company." The plaintiffs answered on February 22, 1892, expressing their surprise at the defendant's statement that McMurchey was not his attorney, and stating: "When he arrived he had a letter he read from you, instructing him to come here and arrange with us," etc., and the writer denied that the defendant had ever written the plaintiffs that the enterprise was to be undertaken by an incorporated company, and called his attention to the fact that the first mention of the company was in the letter of February 21, 1890, requesting that the $1,000 payment be applied on the contract for engines, etc., for the Snake River Transportation Company. "That," said the writer, "was the first knowledge we had of a company, and we did not know it was incorporated, and, further, we never heard that it was until after your company failed. * * * We think you should pay us, as under no account would we have given credit to a company unknown to us without security." In December, 1892, T. M. Rees came to Portland to see the defendant in relation to the plaintiffs' claim, and the defendant then offered to pay 50 cents on the dollar in settlement thereof. The offer having been declined, the present action was commenced.

The complaint sets forth five causes of action. The first is on a contract to construct, sell, and deliver to the defendant a pair of steam engines therein described, and a steam boiler, for which the defendant agreed to pay the sum of $7,350, but had paid thereon $4,000 only. The second is upon a contract to build, construct, sell, and deliver to the defendant a steam capstan at the agreed price of $575, no part of which had been paid. The third is on an account for goods, wares, and merchandise alleged to have been sold by plaintiffs to the defendant at his instance and request, of the value of $2,137.40, no part of which had been paid. The fourth is an action to recover for work and services alleged to have been rendered the defendant by the plaintiffs in making drawings and laying out pipe work for a steamboat at the defendant's request, the reasonable value of which is stated to be $150, no part of which had been paid. The fifth cause of action is to recover freight charges paid by the plaintiffs, alleged to have been paid at the instance of the defendant, amounting to $19.37, no part of which had been paid. The defendant answered, denying that he had contracted with the plaintiffs as alleged in the first and second causes of action and denying that the goods, wares, and merchandise described in the third cause of action had been sold or delivered to him, and denying that the work and services alleged in the fourth cause of action were performed for him and that the freight charges had been paid on his account, and he alleged as a further defense to the first cause of action that the contract had been made with the defendant, acting for and on behalf of the Snake River Transportation Company, and alleged that the $4,000 paid thereon had been paid on behalf of said company. As a further defense to the second cause of action, the answer alleged that the contract for the construction and delivery of the steam capstan was made by J. D. Miller, the superintendent of the Snake River Transportation Company, who was acting for and on behalf of the company and not otherwise. As a further defense to the third cause of action, the answer alleged that the defendant, acting for the Snake River Transportation Company, ordered and purchased the goods in said cause of action described. The answer also alleged that by reason of the plaintiffs having charged and made out their account against the Snake River Transportation Company, and having credited said company with the payment of $4,000, and having assigned their account to Shindler, and by reason of Shindler's action in suing on the same, and prosecuting it to judgment against the corporation, the judgment was a bar to the first cause of action, and the plaintiffs were estopped from alleging that the defendant was the party with whom and for whose benefit the contract had been made, and that the said judgment was also a bar to the second and third causes of action. The plaintiffs in their reply alleged that after the manufacture and sale of

the engines and boiler and steam capstan, and the sale of the goods, wares, and merchandise and machinery to the defendant, he requested the plaintiffs to charge all sums of money due thereafter on the plaintiffs' books to the Snake River Transportation Company, and to bill and consign all machinery, etc., to the defendant in the name of said corporation as an accommodation to the defendant to enable him to keep his accounts separate, and that at the time when said engines, boiler and steam capstan were manufactured, and before said goods, wares, and merchandise were delivered to the defendant, he agreed to pay the contract and purchase price therefor, that the plaintiffs gave and extended credit therefor solely to the defendant and not to the said corporation, and that the assignment of the account to Shindler was made solely at the defendant's request, and for his accommodation and benefit, and that the plaintiffs received no consideration therefor. On the trial the jury returned a verdict for the plaintiffs for the sum of $7,131.79 and interest, on which judgment was rendered for $16,117.40.

Rufus Mallory and W. W. Cotton, for plaintiff in error.

J. V. Beach, Wm. D. Fenton, R. A. Leiter, Ben C. Dey, and James E. Fenton, for defendants in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The defendant assigns error to the refusal of the court to instruct the jury that if they found from the evidence that the plaintiffs at any time elected to treat the contracts as the contracts of the Snake River Transportation Company, the defendant could not be held liable thereon in the present action, and he invokes the doctrine that where a plaintiff has a right to proceed either against the principal for whom a contract was made, or the agent by whom it was made, and he elects to hold either of those liable, he thereby releases the other. We are unable to see how that doctrine was applicable to the present case. According to the testimony of the plaintiffs, they never at any time had the right to make an election and never did make an election, but they contracted with and gave credit to the defendant in his individual capacity, and not as the agent of another. According to the theory of the defendant, as set forth in his answer and in his testimony, the plaintiffs had no right of election, but, contracted with, and gave credit to, the Snake River Transportation Company only. Not only did the plaintiffs testify that the defendant was the principal in the transaction and that they dealt with him individually, but it is shown that at the time when the contract was made the Snake River Transportation Company was not yet in existence. The corporation was not referred to in the communication in which inquiry was made as to the time within which the engines and boiler could be constructed, nor in the final communication by which the defendant closed the contract, and, although the plaintiffs subsequently credited the payments which were made thereon to the Snake River Transportation Company, they testified that they did so at the request of the defendant for reasons which he gave, and that they never, at any time, looked to the corporation for payment, or gave credit in fact to any one save the defendant in his individual capacity. The

question with whom was the contract made, and to whom was the credit extended, was the leading question in the case, and the court, under proper instructions, submitted it to the decision of the jury.

Several assignments of error present the question whether or not the judgment rendered against the Snake River Transportation Company at the suit of Shindler is a bar to the present action. It is contended that a stockholder of a corporation is in privity with the corporation, and that, since the defendant was a stockholder of the corporation defendant in that action, the judgment therein was binding upon him, and he may plead it in bar of the present action. To this contention there are two answers: First, a stockholder is not in all relations in privity with his corporation, and it is generally held that he is in privity only as to rights arising out of his contracts for subscription for stock. Clausen v. Head, 110 Wis. 405, 85 N. W. 1028, 84 Am. St. Rep. 933; Andrews v. National Foundry & Pipe Works, 76 Fed. 172, 22 C. C. A. 110, 36 L. R. A. 139; State Bank v. Bobo, 11 Rich. Law (S. C.) 597. In the second place, in order that a defendant may plead in bar a judgment in a prior action, he must have been a party to or represented in the former action as an actual defendant, and in the same attitude as an adversary party toward the subject of the litigation as that in which he appears in the second. There is evidence in this case which tends to show that the defendant not only did not appear, and was not represented in the capacity of a defendant in the Shindler case, but that he was in a sense the real party in interest therein as plaintiff, that the action was brought at his instance and for the protection of his own interests, and that he was the actual manager of the conduct of the case for the plaintiff, and bore the expense thereof. If it be true that the plaintiffs in this case assigned their claim to Shindler at the instance of the defendant, and on the agreement and understanding that it was for his benefit and that the assignment was not to affect their right of recourse against him as their debtor, the defendant is in no position to advance the plea of estoppel by the former judgment. He is himself estopped to allege estoppel.

Error is assigned to the admission of testimony tending to show that McMurchey was the agent of the defendant, and evidence of statements and admissions made by McMurchey at the time of his visit to Pittsburgh, and to the instruction of the court to the jury that, if McMurchey went to Pittsburgh at the defendant's instance and as his agent, the defendant would be bound by all that he said and did within the scope of his agency or the purpose for which he was sent, and to the refusal of a requested instruction that no promise or representation made by McMurchey to the plaintiffs to the effect that he would advise the defendant that the latter was bound to pay the plaintiffs any amount whatsoever, could be considered by the jury in undertaking to arrive at their verdict. It is argued that inasmuch as the declarations of a person assuming to act as the agent of another, or claiming to be such agent, are not admissible in the first instance to prove the agency, nor to prove the extent thereof, it was error to permit the plaintiffs to testify that McMurchey represented himself

to be the agent of the defendant. But the evidence of McMurchey's agency does not consist alone in his own declarations. There is direct and competent evidence that he was such agent in the testimony of William M. Rees, who testified that, when McMurchey came to Pittsburgh, "He had one of our letters and a letter from Jacob Kamm introducing him to us as his attorney. I read the letter from Jacob Kamm introducing Mr. McMurchey as his attorney." The witness had had a long course of dealing with the defendant, by correspondence, and he must have known the defendant's handwriting. No attempt was made to show that he did not. James McAfee, who at that time was an employé of the plaintiffs, also testified that Mr. McMurchey came to Pittsburgh "with a letter of introduction as Mr. Kamm's attorney." Such a letter would stand for a power of attorney for all the declarations and representations of the agent made in connection with the business on which he was sent. It was competent to show that he said that the defendant was having trouble with his partners, and that he wanted the plaintiffs to make an assignment of their account to him and also to another person, for the purpose of protecting him in a settlement with his partners. McMurchey's statement that the defendant was morally and legally responsible for the debt, while it was not competent evidence for the purpose of proving the defendant's liability, since it was a declaration of an agent as to a past transaction of his principal, was nevertheless competent and proper for the purpose of showing by what representations the plaintiffs were induced to assign their account, and upon what they relied in so doing. There is other evidence in the record tending to show that McMurchey in obtaining the assignment acted as the defendant's attorney. It is true that he had been the attorney of the Snake River Transportation Company, but it is evident that if he went to Pittsburgh at the instance of the defendant, to obtain for him, or to another for his use, an assignment of the plaintiffs' account, to be used in a settlement of his difficulties with his partners, and for his own protection as against them, McMurchey was acting in a capacity hostile to the corporation and to the other stockholders, and was representing the defendant only. There is other testimony in the record tending to show that he was the defendant's attorney. Shindler testified that the defendant and McMurchey came to his store, bringing an assignment from the plaintiffs, and that the defendant wanted him, Shindler, to sue on that and two other accounts. He testified:

"Mr. Kamm said he had this claim assigned to me. I understood at the time it was through Mr. Kamm's request that the Reeses assigned their claim to me."

C. W. Miller testified that Mr. Kamm came to his office and employed him to bring the suit. He testified that he had advised the defendant to have the claims all assigned to one person, and that that was the course pursued, and that McMurchey gathered up the claims. "He got them assigned for Mr. Kamm, as I understood it." We find no error, therefore, in the admission of the evidence, or in the instruction of the court, or in the refusal to instruct as requested by the defendant.

The defendant assigns error to the admission in evidence of certain drawings made by the plaintiffs' draughtsman for use in the shop in constructing the boiler, engines, and other machinery which were the subject of the contract. The draughtsman testified that the defendant was introduced to him as the man who was getting the boat built, and that he saw the defendant on an average of twice a day during the time of his stay in Pittsburgh; that after the witness had prepared the drawings he submitted them a number of times to the defendant, and that at the defendant's instance numerous changes were made therein. Thomas M. Rees also testified that the defendant saw the drawings and that a blue print of one of them, with the name "Jacob Kamm" upon it, was subsequently sent to the defendant at Portland. The defendant did not deny that he assisted the draughtsman in preparing the drawings, and did not testify that he did not see the inscriptions "Jacob Kamm" thereon. The name "Snake River Transportation Company" does not appear on any of the drawings, but on each of them is written the name "Jacob Kamm" or "Kamm," or "Kamm engine," or "Kamm boiler" or "for Kamm." It is true that no witness testified that the attention of the defendant was ever directed to his name as it appeared on the drawings or that he actually observed it. But, in view of his failure to deny that he noticed his name thereon, there was clearly no error in submitting the drawings, with the inscriptions thereon, to the jury, that they might give them such weight as in their judgment they were entitled to in determining the question: To whom was the credit originally given?

Error is assigned to the admission of certain entries in the plaintiffs' books of accounts, entries made in January, February, and March, 1890, in an account of the time of the men while working on the boilers and engines, entries made in March, 1890, in a book containing an account of the material used in the construction of the boilers and engines, entries made in March, April, and May, 1890, in a book of goods purchased, to be used in carrying out the contracts, and entries made in a book placed in the hands of the foundry foreman, in which to keep the weights of the various articles manufactured. These books were introduced for the purpose of showing that the name of the defendant appeared on such accounts. They bear such headings as "Kamm Engines," or "Engines Kamm," "For Kamm Boiler," "For Kamm," and the last thereof is headed "Captain Jacob Kamm." The defendant had shown that on the ledger of the plaintiffs the $1,000 payment of March 1st, and the $3,000 payment of March 29, 1890, appeared as credited to the Snake River Transportation Company. The plaintiffs had testified that those payments were so entered to the credit of the corporation at the request of the defendant, and for the reason, as he stated, that he wished to keep this account separate from his other accounts, and wanted to have control of the shipment for the purpose of protecting himself. The defendant contends that the entries of credits so made are conclusive evidence that credit was given to the corporation, and that the promise of the defendant, if any he made, was that of a guarantor, void if not in writing, and that in any view of the original transaction, the sub-

sequent entries in other books tending to show that credit was given to the defendant, were self-serving in their nature and incompetent, and that the rights of the defendant could not be varied by entries which were not contemporaneous with the transaction and not made in the due course of business as part of the res gestæ. The fact that a manufacturer of goods charges the same to, or enters credits thereon in an account with the person to whom they are delivered is prima facie evidence to show for whom the goods were manufactured, and to whom the credit was given, but it is not conclusive evidence, and the presumption may be overcome by proof that the goods were in fact manufactured for, and the credit was in fact given to another. Clark v. Jones, 87 Ala. 474, 6 South. 362; Lusk v. Throop, 189 Ill. 127, 59 N. E. 529; Winslow v. Dakota Lumber Co., 32 Minn. 237, 20 N. W. 145; Lance v. Pearce et al., 101 Ind. 595, 1 N. E. 184; Burkhalter v. Farmer, 5 Kan. 477. We think that the entries so admitted were, in contemplation of law, contemporaneous with the transaction, and part of the res gestæ. It is true that they were not made at the very date when the contract was made. The majority of them seem to have been made in March, 1890. Some were made in April and May of that year, and some in January and February, several weeks prior to the first entry of the name of the Snake River Transportation Company on any of the plaintiffs' books. But they were all made, either at the beginning or during the progress of the work on the contracts, and before any of the machinery had been manufactured or shipped from the plaintiffs' shop. "The entry need not be made exactly at the time of the occurrence, but it is sufficient if it is made within a reasonable time. In this particular every case must be made to depend upon its own peculiar circumstances, having regard to the situation of the parties, the kind of business, the mode of conducting it, and the time and manner of making the entries." 17 Cyc. 384. It has been held that entries made at the completion of a continuous transactions are admissible (Bolton's Appeal, 3 Grant Cas. [Pa.] 204), and that, where a vendor has sold goods to be delivered at a distance, entries made at the time of their delivery to the carrier are competent evidence of the sale and delivery (Keim v. Rush, 5 Watts & S. [Pa.] 377). Applying these principles to the present case, it seems clear that all entries made during the progress of the construction of the machinery in the due course of business, before the delivery of the goods, and before any controversy had arisen concerning the person to whom the same were chargeable, are contemporaneous entries. A more serious objection is that the entries were not made with intent to make a charge against the defendant, but were entries made in the accounts of the plaintiffs for their own use and convenience. But, in view of the following considerations, we are not convinced that it was reversible error to admit them: (1) They were but cumulative evidence of the facts shown by the drawings; (2) all the material evidence contained in the entries was brought out in the deposition of the witness Shields without objection, and the deposition was read to the jury without objection; (3) the entries were offered and received, not for the purpose of charging the defendant, but for the pur-

pose of corroborating the plaintiffs' testimony that credit was given to the defendant and not to the Snake River Transportation Company. Book entries are often admissible for the purpose of corroborating a witness, although they may not be admissible as substantive evidence for the purpose of proving items of account. Donahue v. Connor, 93 Pa. 356; Gill v. Staylor, 93 Md. 453, 49 Atl. 650; Wright v. Towle, 67 Mich. 265, 34 N. W. 578; Perry State Bank v. Elledge, 99 Ill. App. 307; Petit v. Teal, 57 Ga. 145; Bean v. Lambert (C. C.) 77 Fed. 862.

It is assigned as error that the court permitted Shindler to testify that he always looked to the defendant for payment, and that he looked to him for the payment of the claim of the G. Shindler Furniture Company against the steamboat Norma. This testimony was given on the redirect examination of the witness, after he had testified on cross-examination by defendant's counsel in answer to the question: "You had never trusted Mr. Kamm, had you?" to which he answered:

"Well, that is who we did trust. We furnished four or five steamboats for him, and Mr. Kamm came in the store and ordered anything. We never worried about who to charge it to, the different corporations he was in. We always did business with Mr. Kamm."

He had further testified on the cross-examination that his company had furnished goods for five steamers for the defendant and that the charges therefor had been made against the different boats and different corporations at the defendant's request, "But we always looked to him for the money." The testimony so brought out by the defendant on cross-examination covers all the evidence given on the redirect examination which is the subject of the assignment of error, and there was no error, therefore, in its admission.

We find no error in the record for which the judgment should be reversed. It is accordingly affirmed.