Argued February 9, affirmed April 3, 1923.

# CENTRAL OREGON IRRIGATION CO. *v.* YOUNG.

### (213 Pac. 782.)

**Waters and Watercourses—Irrigation Company Turning Over System to District Near End of Season Held Entitled to Maintenance Fee for Such Season—"Due."**

1.  Under a contract between the state land board and an irrigation company, to which the rights of another such company under ·a contract with the state for the reclamation of land following the state's acceptance of the Carey Act (U. S. Comp. Stats., § 4685) by Laws of 1901, page 378 (Section 5576 et seq., Or. L.), were assigned, entitling it to charge purchasers of water rights an annual maintenance fee until control of the canal system was transferred, as therein provided, to a water users' association, in lieu of which an irrigation district was organized, as authorized by Laws of 1917, Chapter 357 (Section 7322, Or. L.), to take over the project, assignee, having made all maintenance expenditures for the 1921 season before the system was turned over to the district, on August 19th, practically at the end of that season, pursuant to a decree dated July 9th, reserving to the company the right to collect unpaid maintenance fees "due" when the decree was entered, was entitled to collect a fee for the 1921 season, though the rules of the desert land board permitted, and defendant's contract provided for, payment in installments due August 1st and November 1st; the word "due" being used in its primary sense of "owing."

**Judgment—Decree Requiring Irrigation Company to Turn Over Project to District Held not Res Judicata in Company's Action to Enforce Lien for Collection of Maintenance Fee.**

2.  A decree requiring an irrigation company to turn over a project to an irrigation district *held* not *res judicata* in a subsequent suit by the company to foreclose a lien on land to enforce collection of a maintenance fee due from a settler, who was neither a party nor privy to the decree; the company having had no opportunity to recover in the former suit.

**Judgment—Successor to Property Rights Affected by Judgment Before Institution of Suit is not "Privy."**

3.  A "privy" to a judgment is one who acquires an interest in the subject matter after rendition of the judgment, and no one succeeding to property rights affected thereby before institution of suit is privy to the judgment.

**Judgment—Privy can Claim Only Such Rights as were Obtained by Party to Whom He is Privy.**

4.  A privy to a judgment can claim only such rights as were obtained by the party to whom he is privy.

---

1.  Legal meaning of "due,", see note in **Ann. Cas.** 1918E, 756.

From Deschutes: W. N. GATENS, Judge.

In Banc.

This is a suit in equity brought by the Central Oregon Irrigation Company, a corporation, against L. C. Young, a settler on a Carey Act project, to foreclose a lien on defendant's land for the purpose of enforcing the collection of a $20 maintenance fee for the year 1921, $10 of which was payable on August 1st, and $10 on November 1st, of that year. A decree was rendered in favor of the plaintiff from which defendant appeals. The defendant by his answer denied plaintiff's right to collect the maintenance fee for the year 1921, upon the ground that at the time the fee became due and payable plaintiff had no legal right to collect it.          AFFIRMED.

For appellant there was a brief over the names of *Mr. H. H. De Armond, Mr. Henry S. Gray* and *Mr. John A. Laing,* with oral arguments by *Mr. De Armond* and *Mr. Gray.*

For respondent there was a brief over the name of *Messrs. Stearns & Burdick,* with an oral argument by *Mr. W. Lair Thompson.*

BEAN, J.—The record shows the following facts, upon which defendant bases his defense: By the Laws of 1901, page 378 (Section 5576 et seq., Or. L.) the State of Oregon accepted the benefits of the Carey Act. On May 31, 1902, a contract was entered into between the State of Oregon and the Pilot Butte Development Company for the reclamation of 84,707 acres of land in Crook and Deschutes Counties, the state acting through the state land board and later through its desert land board. On March 14, 1904,

the Pilot Butte Development Company, with the consent of the state land board, duly assigned and transferred its contract and all its rights thereunder to the Deschutes Irrigation and Power Company which thereafter continued the construction and operation of the irrigation system until the spring of 1910.

In 1906, the Deschutes Irrigation and Power Company entered into a contract, No. 284, with the defendant L. C. Young for the irrigation of twenty acres of land described in the complaint. About October 27, 1910, the Central Oregon Irrigation Company, plaintiff, succeeded by purchase to all the property rights and contracts of the Deschutes Irrigation and Power Company including defendant's contract No. 284, and until about August 1, 1921, continued to operate the irrigation system and collect maintenance fees therefor.

By virtue of defendant's contract No. 284, as affected by a rule duly adopted, there became payable from defendant L. C. Young maintenance fees for the year 1921, in the sum of $10 on August 1, 1921, and the further sum of $10 on November 1, 1921.

The contract of June 17, 1907, between the Deschutes Irrigation and Power Company and the state land board, to which contract with all its benefits and burdens the plaintiff succeeded, contains among others the following provision:

"12. The party of the first part hereby agrees that it will turn over in reasonably good condition and repair and free from all encumbrances, except such rights to take from said system twenty-five cubic feet of water per second of time as may have been reserved by The Pilot Butte Development Company on sale and transfer of its rights and franchises to the party of the first part herein, and transfer and convey by a bargain and sale deed, all its right, title

and interest in and to the irrigation works, including rights of way, headgates, canals, flumes, ditches and laterals specified in said contract of May 31, 1902, and for all reclamation works constructed under this contract, to a corporation of water users after ten years from the date hereof, provided that such corporation of water users shall have been duly and legally organized under the approval of the State Land Board. * * ''

Chapter 357, General Laws of Oregon, 1917 (Section 7322, Or. L.), provided among other things that an irrigation district could be organized in lieu of a water users' association such as referred to in Section 12 above quoted. By virtue of this provision the Central Oregon Irrigation District was organized to take over the project from the Central Oregon Irrigation Company.

Thereafter a suit was filed in the Circuit Court for Deschutes County by H. H. Dietrich and Central Oregon Irrigation District as plaintiffs against Central Oregon Irrigation Company and the Desert Land Board of the State of Oregon as defendants, to compel the Central Oregon Irrigation Company to turn over the project to the Central Oregon Irrigation District as contemplated by Section 12 of the contract of June 17, 1907, above quoted, resulting in a decree on July 9, 1921, requiring plaintiff herein to turn the irrigation system over to the irrigation district on August 1, 1921. That decree recites that the Central Oregon Irrigation Company reserved the right:

"To collect all unpaid maintenance fees, which are due at the time of the entering of this decree, and at its option to exercise the rights of collection thereof, by action at law or by foreclosure of the lien created by Section 7 of said contract of June 17, 1907.''

Defendant was one of the settlers in the Central Oregon Irrigation District, and his land described in the complaint is located therein.

It is stated by defendant that the sole issue is as to the right of the plaintiff to collect such maintenance fees. The contract between the state and the Deschutes Irrigation and Power Company of June 17, 1907, contains the following provision:

"7. Until such time as the control and management of the canal system shall be transferred to a corporation or association of water users as herein provided, the party of the first part shall be entitled to make an annual charge to the purchasers of water rights for the maintenance of the canal system and for the delivery of water in the required amount as needed, * * Said maintenance fee or charge, if not paid each year upon demand, shall constitute a lien upon each legal subdivision of such land, and such lien may be enforced by foreclosure and sale of said land in like manner as a mortgage upon real estate * * ."

The following stipulation was entered into upon the trial:

"It is stipulated between the plaintiff and defendant by their respective attorneys that there are outstanding within the Central Oregon Irrigation Carey act segregation situated in Deschutes County and Crook County, Oregon, 952 contracts, divided into what is known as form number one, form number two and form number three, consisting of 221 form number one contracts, calling for maintenance payable one half June 1st, and one half payable November 1st, of each year; 204 number two form contracts, calling for maintenance due August 1st and November 1st of each year, and 502 number three form contracts calling for maintenance payable May 1st each year.

Defendant's contract No. 284 is what is known as "form number two." It is contended on the part of defendant that the decree of July 9, 1921, precludes the plaintiff from collecting the maintenance fees in question.

On behalf of plaintiff it is insisted that plaintiff, by virtue of its contract and the fulfillment thereof, is entitled to collect the maintenance fees in question for the season of 1921; that the defendant was not a party to the suit resulting in a decree on July 9, 1921; that the matter of maintenance fees was not an issue in that suit; and that the decree does not determine the rights of the parties herein.

Defendant's application and agreement for the reclamation is "subject to the annual maintenance charge of one dollar per acre mentioned in the contract between the State of Oregon and the second party herein" (Deschutes Irrigation and Power Company). By the terms of the contract the company is required to keep and maintain the main canal and works in good condition and repair, and furnish water during the irrigation season to lands entitled thereto.

1. It is clear that the plaintiff by virtue of the contract with the state, and the agreement with defendant, had a valid claim for maintenance fees for furnishing water for irrigation each season until the system was turned over to the Irrigation District. The transfer was not completed until August 19, 1921, the date of the confirmatory deed, and the irrigation season for maximum use for crops for that year was practically at an end, it being from May 23d to August 20th. At other times throughout the year "sufficient water for stock and domestic purposes" was required to be furnished by the system. The deeds executed

by the plaintiff to the Irrigation District do not purport to convey or relinquish any maintenance fees.

It is apparent from the various contracts and documents in evidence that the maintenance charges are intended to compensate for the upkeep of the system, such as cleaning canals preparatory to furnishing water for the irrigation of crops. No testimony was introduced to show that anyone other than plaintiff did any such work on the system or expended a cent thereon for the season of 1921, nor to show that plaintiff is not legally and equitably entitled to be compensated for the maintenance of the system for the irrigation season of that year, the expenditures for which, in so far as the record shows, were all made some time before the system was turned over to the Irrigation District which is not making any claim thereto in this suit. It does not appear from the record that it was ever the intention of the parties to split the maintenance charges for any season.

The work of preparation to deliver water is naturally and necessarily done in the early spring season before water was turned into the canal system. It follows that the maintenance fees were earned in advance of the maximum period of irrigation. Although the rules of the desert land board permit the water user to pay in installments, one half August 1st and one half November 1st, this does not indicate that the fees were not owing to the plaintiff prior to the time of the transfer of the system.

In the reservation referred to in the decree of July 9, 1921, "To collect all unpaid maintenance fees, which are due at the time of the entering of this decree," we think the word "due" is used in its primary sense of "owing." 3 Words and Phrases 2218, citing: *Sather Banking Co.* v. *Arthur R. Briggs Co.,*

138 Cal. 724 (72 Pac. 352, 355); *United States* v. *Bank of N. Carolina,* 31 U. S. (6 Pet.) 29, 36 (8 L. Ed. 308, see, also, Rose's U. S. Notes).

In 3 Words and Phrases, 2218, we read:

"The word 'due,' says Mr. Justice EWING in *Scudder* v. *Scudder,* 10 N. J. Law (5 Halst.), 340, has more than one signification, or is used on different occasions to express distinct ideas. At times it signifies a simple indebtedness, without reference to the time of payment. At other times it shows that the day of payment or tender is passed. In *United States* v. *Bank of North Carolina,* 31 U. S. (6 Pet.) 29 (8 L. Ed. 308), Mr. Justice STOREY says that it is sometimes used to express a mere state of indebtedness, and then it is an equivalent to 'owed' or 'owing,' and it is sometimes used to express the fact that the debt has become due. * * *"

"The meaning of the word 'due' is 'owe.' It is so understood in common parlance. It is so used in official settlements and in settlements between individuals. *Roberts* v. *Beatty,* 2 Penr. & W. (Pa.) 63 (21 Am. Dec. 410)."

" 'Due,' as used in a pleading alleging a certain indebtedness to be due, is equivalent to the word 'owed' or 'owing.' *Griffin* v. *Jackson,* 13 N. Y. Supp. 321 (59 Hun, 620)."

2. The defendant Young was neither a party nor privy to the decree of July 9, 1921, and cannot plead that decree as *res adjudicata* in bar of the claim of plaintiff. That suit was between the Irrigation District and the company, to compel the latter to transfer specific real property. The validity of the company's claim for services rendered to one not a party to the decree could not be determined therein.

3. A privy is one who acquired an interest in the subject matter after the rendition of the decree. No one is privy to a judgment whose succession to the rights of property thereby affected occurred prior to

the institution of the suit: Freeman on Judgments, par. 162; Black on Judgments (2 ed.), p. 831; Greenleaf on Evidence (16 ed.), § 523; *White Brass Castings Co.* v. *Union Metal Mfg. Co.,* 232 Ill. 165 (83 N. E. 540, 122 Am. St. Rep. 63); *Calculagraph Co.* v. *Automatic etc. Co.,* 154 Fed. 166, 167; *Northwestern State Bank* v. *Silberman,* 154 Fed. 809, 814 (83 C. C. A. 525); *State ex rel.* v. *City of St. Louis,* 145 Mo. 551 (46 S. W. 981, 42 L. R. A. 113); *Allred* v. *Smith,* 135 N. C. 443 (47 S. E. 597, 65 L. R. A. 924); *Kamm* v. *Rees,* 177 Fed. 14 (100 C. C. A. 432).

In Broom's Legal Maxims (8 ed.), 330, we read:

"A plea of *res judicata* must show either an actual merger or that the same point has already been decided between the same parties—that the plaintiff had an opportunity of recovering, and but for his own fault might have recovered in the original suit that which he seeks to recover in the second action."

4. Plaintiff had no such opportunity in the former suit in which a decree was entered July 9, 1921: See, also, *Mershon* v. *Williams,* 63 N. J. Law, 398 (44 Atl. 211); *Glenn* v. *Savage,* 14 Or. 567, 573 (13 Pac. 442); *Applegate* v. *Dowell,* 15 Or. 513 (16 Pac. 651); *Caseday* v. *Lindstrom,* 44 Or. 309, 314 (75 Pac. 222). A privy can claim only such rights as were obtained by the party to whom he is privy: *Hart* v. *Moulton,* 104 Wis. 349 (80 N. W. 599, 76 Am. St. Rep. 881).

The equities are with the plaintiff. The defendant justly owes the company the maintenance fees in question. They were not transferred to the district.

The decree of the lower court was correct, and is affirmed.                                AFFIRMED.

Mr. Justice BURNETT did not sit at the hearing of this case.