**HULL et al. v. ROLFSRUD.**

No. 7414.

Supreme Court of North Dakota.

May 28, 1954.

Rehearing Denied July 1, 1954.

96

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for plaintiffs and appellants.

Eugene A. Burdick and Burk, McIntee & O'Connell, Williston, for defendant and respondent.

GRIMSON, Judge.

This is an action to quiet title to the Northeast Quarter (NE¼) of the Southwest Quarter (SW¼); East Half (E½) of the Northwest Quarter (NW¼) and Lot Two (2) of Section Nineteen (19), Township One Hundred Fifty-two (152), Range Ninety-six (96), McKenzie County, North Dakota. The plaintiffs, as trustees, claim title to this property under a trust established by the last will and testament of one J. Y. Hull, and the final decree issued thereon by the county court of McKenzie County. The defendant makes a general denial, claiming the invalidity of the trust included in the final decree and setting forth his title under a quitclaim deed covering said property, signed by the legal heirs of J. Y. Hull, who also are the beneficiaries of the alleged trust and include the plaintiff trustees. In a counterclaim based on the quitclaim deed the defendant asks that the title be quieted in him and the plaintiffs' claims be adjudged null and void. The district court found for the defendant and plaintiffs appealed demanding a trial de novo.

The first issue raised by the plaintiffs is that the defendant has no right to make a collateral attack upon the final decree of distribution. They state, correctly, that a final decree of distribution is of equal rank with the judgments of other courts and has the same immunity from collateral

attack. Joy v. Elton, 9 N.D. 428, 83 N.W. 875; Fischer v. Dolwig, 29 N.D. 561, 151 N.W. 431; Krumenacker v. Andis, 38 N.D. 500, 165 N.W. 524; Knight v. Harrison, 43 N.D. 76, 174 N.W. 632; Dolphin v. Peterson, 63 N.D. 792, 249 N.W. 784.

It is generally held that a judgment cannot be collaterally attacked by a party to the action or by one in privity with a party. 49 C.J.S., Judgments, § 413, page 817; Lamb v. King, 70 N.D. 469, 296 N.W. 185; 31 Am.Jur. Judgments, § 581, p. 179; Tuttle v. Tuttle, 48 N.D. 10, 181 N.W. 898. Plaintiffs claim that the defendant is in privity with them by reason of the quitclaim deed he received from the heirs of J. Y. Hull and under which he claims.

The evidence shows that Mr. Rolfsrud, the defendant, is not related to the parties in any way. He was not made a party to the probate proceedings nor served with any notice of them. Whatever interest he has under the quitclaim deed was obtained by him some three years before the probate proceedings in question were commenced. His rights whatever they are were not in issue in the probate proceedings nor are they derived through any issue decided in said probate proceeding. He had no right of control over those proceedings or right of appeal therefrom.

In 72 C.J.S., Privity, page 958, it is said:

"The word 'privy' is the root of the common word 'privity,' and as a noun is defined as meaning a person who has succeeded to some right or obligation which one of the parties to the act derived through the act or incurred under it; * * *. In order to make a man a privy to an action he must have acquired an interest in the subject matter of the action either by inheritance, succession, or purchase from a party subsequently to the action, or he must hold property subordinately." (Citing cases.)

In Leach v. First Nat. Bank, Fort Dodge, 206 Iowa 265, 217 N.W. 865, 868, it is said:

"Privity is said to be a mutual or successive relationship to the same rights of property, and if it is sought to bind one as privy by an adjudication against another with whom he is in privity, it must appear that at the time he acquired the right, or succeeded to the title, it was then affected by the adjudication, for, *if the right was acquired by him before the adjudication, then the doctrine cannot apply.*" (Emphasis supplied.)

To the same effect are the following cases: Gill v. Porter, 176 N.C. 451, 97 S.E. 381; Orthwein v. Thomas, 127 Ill. 554, 21 N.E. 430, 435, 4 L.R.A. 434; Kahn v. Richard L. Walsh Co., 72 Misc. 20, 129 N.Y.S. 137, 139; Central Oregon Irr. Co. v. Young, 107 Or. 39, 213 P. 782, 784. See also 50 C.J.S., Judgments, § 788, page 324; Weed Sewing Machine Co. v. Baker, C.C., 40 F. 56, 1 McCreary 579; See also Sailer v. Mercer County, 77 N.D. 698, 45 N.W.2d 206, 22 A.L.R.2d 988. In Boswell's Lessee v. Otis, 9 How. 336, 13 L.Ed. 164, it is well said:

"No principle is more vital to the administration of justice, than that no man shall be condemned in his person or property without notice, and an opportunity to make his defense."

The cases cited by the plaintiff involved collateral attacks on judgments by those who had been parties to the action or who had succeeded to the interest of parties after the judgment involved. Tuttle v. Tuttle, 48 N.D. 10, 181 N.W. 898; Lamb v. King, 70 N.D. 469, 296 N.W. 185.

The will involved in this action was made in December 1922 by one J. Y. Hull, a resident of Oshkosh, Wis. He died April 7, 1928. In that will, after providing for the payment of his debts and leaving some personal property to his wife, he bequeathed and devised the residue of his estate, of which the land here involved was a part, to his wife, Esther V. Hull, his son, Lathrop W. Hull, and one A. T. Hennig of Oshkosh, Wis., as trustees, to manage and care for, sell, invest and reinvest said property and to pay the net annual income therefrom to his wife until her death or until she

remarried. The trustees were given full power to handle the property and if the income was not sufficient at any time to properly care for his wife they could use any or all of the principal necessary for that purpose.

The will then provided further:

"In case of the remarriage of my wife, I give, bequeath and devise to her an undivided one-third of all the balance, remainder and residue of my said trust estate;

"And the remaining two-thirds thereof, in case of her remarriage, and all of said trust estate in case of her death without remarriage, shall go to and be paid over and delivered to, and I do hereby give, bequeath and devise the same, in such cases, to my three children, Lathrop W. Hull, Gertrude Hull Felker and Ella J. Hull Ewens, equally. Provided, however, that if any of my said children shall not have arrived at the age of thirty years at the time of the remarriage or death of my wife, that then and in such case, the share of such of my children as have not arrived at the age of thirty years shall continue to be held by my said son and said A. T. Hennig, as trustees, or by the survivor of them in the trust, until such child or children shall respectively reach the age of thirty years, when the share of each child arriving at the age of thirty years shall be paid to them, and after the remarriage or death of my wife, such child shall receive the net incomes from their share of the trust fund quarterly, until arriving at the age of thirty years. * * *

"If, at the time of the remarriage or death of my wife, any of my said children above named are not then living, then their share shall go to the survivors of my said children, unless, at the time of the death of said child, said deceased child shall have left children surviving, and in case any one of them die before the remarriage or death of my wife leaving children surviving at the remarriage or death of my wife, then,

on such remarriage or death of my wife, such grandchild or grandchildren shall have and receive the proportion or part of the share which would have gone to their parent if then living, viz: if such deceased child of mine shall leave one child surviving it shall receive one-third of the share that would have gone to its parent if then living, and if such deceased child of mine shall leave two or three children surviving, each of said grandchildren shall receive one-third of the share, which would have gone to their parent if then living, and if such deceased child of mine shall leave more than three children, they shall each receive an equal portion of the share which would have gone to my deceased child if then living, and in case such deceased child shall have left only one or two children, then the balance of the share that would have gone to my deceased child if then living shall go to the survivor or survivors of my children then living.

"The shares or portions hereinbefore given to grandchildren in case of the death of their parents before the remarriage or death of my wife, shall, however, not be payable to any such grandchild until such grandchild shall arrive at the age of twenty-five years, and meanwhile, the said share shall be managed by my son and said A. T. Hennig, or the survivor of them as trustees, and the net income of each such grandchild's share shall be paid to him or her quarterly until said grandchild arrives at the age of twenty-five years."

A. T. Hennig resigned as executor and trustee subsequent to the admission of the will to probate in Wisconsin on April 8, 1928, and before any of the matters here involved occurred. No one was appointed in his place. That left as trustees only Esther V. Hull, the widow, and Lathrop W. Hull, the son.

It is claimed by the defendant that under the trust provisions in the Hull will the

power of alienation of the decedent's property is suspended for a period longer than is permitted by the statutes of North Dakota and that, therefore, the trust is void.

The North Dakota statute in effect at the time of the testator's death, April 7, 1928, was Section 5287 C.L.1913, which provided:

"The absolute power of alienation cannot be suspended by any limitation or condition whatever for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in the single case mentioned in section 5315" (The exception pertains to the creation of a remainder on a prior remainder and is not material in this case).

This section was amended by Chapter 203 S.L.1933, also by Chapter 274 S.L.1953 but those amendments do not apply because they were passed after the creation of the trust.

In interpreting a will the court must determine from the whole text thereof the intention of the testator. Section 56-0501 NDRC 1943 reads:

"A will is to be construed according to the intention of the testator. When his intention cannot have effect to its full extent it must have effect as far as possible."

In Crabtree v. Kelly, 65 N.D. 501, 260 N.W. 262, this court held that "In construing a will, the intention of the testator must be given effect as far as possible."

The plaintiffs claim, however, that under this will the power of alienation is not suspended because the trustees are given authority to sell and exchange such portions of the property as may be for the best interests of the estate or necessary for the care of the widow. The provisions of the will giving the trustees such power reads as follows:

"All the rest, residue and remainder of my property and estate of every kind, real, personal and mixed, and wherever situate, I do hereby give, bequeath and devise to my wife, Esther V. Hull, my son, Lathrop W. Hull, and A. T. Hennig of Oshkosh, Wisconsin, as trustees, never-the-less, and in trust, for the following purposes and objects: To handle, manage, care for and invest and reinvest the same, and the proceeds thereof, and to sell, assign, transfer and dispose of any or all of the personal property, and to sell, assign, transfer, convey or otherwise dispose of the real estate, or any part or all thereof, and to pay the net annual income therefrom monthly, quarterly, or at such other times as said trustees may deem best, to my said wife, Esther V. Hull, until her death, or until she remarry.

"My said trustees shall have and are hereby given full power and authority, in case, in their discretion or judgment, the income of said property is not sufficient at any time to properly care for, support and maintain my said wife in a proper manner, to use any part or all of the principal, as in their discretion may deem necessary and proper for providing for her proper care, maintenance and support until her death or remarriage."

While the testator authorized the trustees to sell and convey the property his language clearly indicates that the proceeds of such sales are to be re-invested as a part of the trust except when sales are necessary to provide for the widow. Such sales for the support of the widow, however, are subject to limitations and could only be made if absolutely necessary in the judgment of the trustees for the support of the widow. That provision was only a part of the provision for the support of the widow. Nothing in the will gave the trustees the power to sell the property and to terminate the trust except at the period fixed by the terms of the will. The inten-

tion of the testator to restrain sales except as re-investment remains clear. In other words, the trust, except for the primary purpose of providing for the testator's widow was to be held intact even though the property was sold and the proceeds reinvested until distributed according to the will. Such exchanges and sales are permitted by Section 5314 C.L.1913, Section 47–0412 NDRC 1943, which reads:

"The suspension of all power to alienate the subject of a trust, other than the power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust is a suspension of the power of alienation within the meaning of section 5287."

In Penfield v. Tower, 1 N.D. 216, 46 N.W. 413, this court says:

"The power to change the trust property from real to personal estate will not save the trust from the condemnation of the statute. * * *"

In 41 Am.Jur. Perpetuities and Restraints on Alienation, § 85, p. 122, it is said:

"A testamentary power of sale of real estate does not avoid statutes as to suspension of power of alienation when the resultant proceeds wear the same fetters as restrained the alienation of land." See also Cruikshank v. Home for the Friendless, 113 N.Y. 337, 21 N.E. 64, 4 L.R.A. 140.

Plaintiffs further contend that under the provisions of the will authorizing the sale of the real property an equitable conversion of real property occurs and that, therefore, all of the property must be deemed personal property. He cites Section 56–0522 NDRC 1943 which provides:

"When a will directs the conversion of real property into money such property and all its proceeds must be deemed personal property from the time of the testator's death."

Upon such a conversion plaintiffs claim the estate should be administered under the laws of Wisconsin as personal property, Section 56–0214 NDRC 1943, Penfield v. Tower, supra, and that under Wisconsin laws personal property is relieved from the restraints of perpetuity placed on real property.

It will be noticed, however, that the section quoted provides that the conversion occurs only when the "will directs" such conversion. A careful examination of the will fails to disclose any direction to that effect. In Penfield v. Tower, supra, this court says:

"It is therefore evident that if a sale is not absolutely indispensable, and if any discretion as to the fact of sale is vested in the grantee of the power of sale, no equitable conversion results. The power of sale must be construed as a direction to sell, or there is no conversion." See also Hagen v. Sacrison, 19 N.D. 160, 123 N.W. 518, 26 L.R. A.,N.S., 724.

The defendant points to the provision in the will for the grandchildren to support his contention that the will is contrary to the statutes on perpetuities and therefore invalid.

After the provision in the will for a life estate in the widow and the remainder over to his children the will provides that if at the time of the remarriage or death of his wife any of his children were not living then the share of the deceased child should go to the survivors of his children unless the deceased child left children surviving, in which case that share was to go to the grandchild or grandchildren in proportions set out in the will. That share, however, was not payable until such grandchild or grandchildren arrived at the age of 25 years. The evidence does not show any grandchildren living at the time of the death of the testator. The widow, Esther V. Hull was still living at the time of the trial. These provisions for the grandchildren are broad enough to include any grandchildren born after the death of the

testator in 1928 and the time of the trial in September 1952, and until the death of the widow. Under these provisions of the will the trust was to continue until the time of distribution of the estate when the youngest grandchild arrived at the age of 25 years. That suspended the power of alienation of that property not only beyond lives in being but also until the youngest grandchild which may have been born after testator's death would be 25 years of age. That is clearly a violation of the Section 5287, supra.

In Penfield v. Tower, 1 N.D. 216, 46 N.W. 413, this court held:

"An active or express trust suspends the absolute power of alienation during its continuance, and such a trust is therefore void when it is to continue for longer than lives in being at the death of the testator. The absolute power of alienation in this state cannot be suspended for longer than the continuance of the lives in being at the testator's death, except as provided in Section 2745 of the Compiled Laws." (Such exception is not applicable to the case at bar.)

In an annotation in 155 A.L.R. on Perpetuities, p. 17, many cases are cited and the conclusion is reached that:

"The general American rule is that where a gift is made to a living person for life, with a limitation over to such members of a class as may attain an age above 21 years, if by any possibility the class may at the time of distribution include persons born after the death of the testator, the limitation over is too remote under the rule against perpetuities and is void." 155 A.L.R.Anno.Perpetuities, 698, 712; Owsley v. Harrison, 190 Ill. 235, 60 N.E. 89.

In Maddox v. Keeler, 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578, it is said:

"The rule against perpetuities is not to be tested by actualities, but by possibilities. * * *" See also Ford v. Yost, 299 Ky. 682, 186 S.W.2d 896, 162 A.L.R. 149.

The plaintiffs contend, however, that even if portions of the will are invalid as violating the statute against perpetuities the portions which do not violate that statute may be held valid. They cite the general rule set out in the Annotation in 28 A.L.R. p. 376, to the effect that:

"The general rule is that a remainder which is void because in violation of the rule against perpetuities does not necessarily render invalid the prior estate, but that the latter will be sustained notwithstanding the invalidity of the ulterior estate, where the two are not inseparable and dependent parts of a general testamentary scheme, and to uphold the one without the other would not defeat the primary or dominant purpose of the testator."

In Quinlan v. Wickman, 233 Ill. 39, 84 N.E. 38, 17 L.R.A., N.S., 216, it is held that where a testatrix bequeathed trust moneys in the hands of a trustee to her daughter, with a primary purpose to provide for the welfare of the daughter, with limitation over to her child or children, and the limitation over is void as against perpetuities, the bequest to the daughter is not thereby invalidated, since it is a rule that, where effect cannot be given to all the provisions of the will, those parts may be sustained which conform to the rules of law, if no violence is thereby done to the general intention of the testatrix.

In Moroney v. Haas, 277 Ill. 467, 115 N.E. 648, 650, it is said:

"Where future interests created by an instrument are avoided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted. Gray on Perpetuities, § 247; Quinlan v. Wickman, supra," See also In re Blake's Estate, 157 Cal. 448, 108 P. 287; Johnson's Trustee v. Johnson, 79 S.W. 293, 25 Ky.Law Rep. 2119; Aldendifer v. Wylie, 306 Ill. 426, 138 N.E. 143; In re Hardy's Estate, 62 Cal.App.2d 958, 145 P.2d 910; In re Gardiner's Estate, 45 Cal.App.2d 559,

114 P.2d 643; Landrem v. Jordan, 203 U.S. 56, 27 S.Ct. 17, 51 L.Ed. 88.

Reading of the will discloses that the testator left to his wife the total net income from his property until she remarried or died. In case she remarried he bequeathed to her the undivided one-third of the remainder of his trust estate. The remaining two-thirds in case of her remarriage and all of said trust estate in case of her death without remarriage was bequeathed to his three children in equal shares with the provision that if any of said children had not arrived at the age of 30 years the trustees were to continue to hold said share in trust until the age of 30 years had arrived when their share was to be paid over to them. During that interval such child or children were to receive the net income from their share in the trust property.

In the matter of the In re Estate of Gray, 27 N.D. 417, 146 N.W. 722, L.R.A.1917A, 611, the testator devised a life estate in all of his real property to his wife. Then subject to that life interest he bequeathed to each of his sons certain real estate subject to a condition that each pay his daughters certain sums of money within two years after the death of his wife. The court held that construing the will in its entirety the intent of the testator was to leave the sons an unconditional estate in the property at his death subject to the life estate in his widow and that the further provision of payment to the daughters was not made a condition precedent to the vesting of the estate in the sons. The court says:

"Such devise to the son not being made subject to a condition precedent, there is no basis whatever for the contention of respondents that the same operates to suspend the power of alienation." See also In re Blake's Estate, 157 Cal. 448, 108 P. 287; Wessborg v. Merrill, 195 Mich. 556, 162 N.W. 102, L.R.A.1918E, 1074; First & American National Bank v. Higgins, 208 Minn. 295, 293 N.W. 585; Fulton Trust Co. v. Phillips, 218 N.Y. 573, 113 N.E. 558, L.R.A.1918E, 1070; 2 Simes Future Interests, Sec. 344, p. 176.

In Fulton Trust Co. v. Phillips, 218 N.Y. 573, 113 N.E. 558, 560, L.R.A.1918E, 1070, the court said:

"Where a contrary intention is not manifested in the will, it is a settled rule of construction that, if futurity is annexed to the substance of the gift, the vesting of title is suspended, but if the gift is absolute and the time for payment only is postponed, the gift is not suspended, but the title vests at once. While a great many authorities might be cited in support of this proposition, it is sufficient to refer to Matter of Embree, 9 App.Div. 602, 41 N.Y.S. 737, affirmed 154 N.Y. 778, 49 N.E. 1096; Dickerson v. Sheehy, 156 App. Div. 101, 141 N.Y.S. 35, affirmed 209 N.Y. 592, 103 N.E. 717, and Cammann v. Bailey, 210 N.Y. 19, 30, 103 N.E. 824, where the leading authorities on this subject are reviewed." See also Matter of McQueen's Will, 99 Misc. 185, 163 N.Y.S. 287.

It is clear from the language used that the intention of the testator was to vest an interest in his property in his said children at the time of his death subject to an estate in his widow until she remarried or died. After the remarriage or death of the widow the beneficiaries were to be paid the net income from their share of the trust fund quarterly. That is the time of the vesting of that interest in the beneficiaries. The provision that the payment of the primary trust fund to cestui que trust was not to be made until they were 30 years of age is clearly not a condition precedent to the vesting of an estate. That only relates to the time of the delivery over to them of the vested interest left them by the testator. It is merely the enjoyment of the corpus of the trust that is postponed. In re Fouks' Will, 206 Wis. 69, 238 N.W. 869. Moreover, all the testator's children, Lathrop, Gertrude and Ella, were more than 30 years of age in 1947 and were entitled to receive their share of the trust at the death of their mother, the testator's widow. In re Blake's Estate, 157 Cal. 448, 108 P. 287; Wessborg v. Merrill, 195 Mich. 556, 162

N.W. 102, L.R.A.1918E, 1074; 2 Simes, Future Interests, § 394, p. 176.

 The provision in the will for the life estate to the widow and for the remainder to his children even though not payable until they were 30 years of age does not in any way conflict with the statute against perpetuities. It is only the provisions for the grandchildren that are in conflict therewith. Since the chief purpose of the testator was to provide for his wife and children the invalidity of the bequest to the grandchildren does not interfere therewith and cannot be said to be such an integral part of the will as to make the whole will invalid. 41 Am.Jur. Perpetuities, § 57, Annotation 66 A.L.R. 1349, 1351; Quinlan v. Wickman, 233 Ill. 39, 84 N.E. 38, 17 L.R.A., N.S., 216; Aldendifer v. Wylie, 306 Ill. 426, 138 N.E. 143.

"If the invalid part of a trust is clearly separable from the valid portion and can be disregarded without disrupting the general scheme of the testator, or his dominant and primary purpose, then the valid portion may be upheld. 66 A.L.R. 1348, 1351."

"If future interests created by any instrument are voided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument. Thus, if an estate is given to A for life; remainder to his children and their heirs, but, if the children all die under 25, then to B and his heirs, the limitation to B is too remote, and the children of A take an indefeasible fee simple." Gray, Perpetuities, (3rd.Ed.1915) § 247.

 "The construction of a will must be favorable to testacy if it reasonably admits of such construction." In re Gardiner's Estate, 45 Cal.App.2d 559, 114 P.2d 643, 646. See also Estate of Spreckels, 162 Cal. 559, 123 P. 371; In re Estate of Dunphy, 147 Cal. 95, 81 P. 315; In re Phelps' Estate, 182 Cal. 752, 190 P. 17; Johnson's Trustees v. Johnson, 79 S.W. 293, 25 Ky. Law Rep. 2119.

When the testator's intention cannot be given effect to its full extent it must be given effect as far as possible. Section 56–0501, NDRC supra. "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." Section 56–0510 NDRC 1943. We conclude, therefore, that the provision of the Hull will as far as the widow and children are concerned must be held valid.

On holding the will of J. Y. Hull valid as far as it concerns life estate to the widow and remainder over to his children, the question arises what interest do the beneficiaries have in the real estate. Plaintiffs claim the beneficiaries have no interest in the real estate which they can transfer by deed and cite Section 59–0314 NDRC 1943 which reads as follows:

"Except as otherwise provided in this chapter, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property but may enforce the performance of the trust."

New York, California, Minnesota, Montana, South Dakota and Wisconsin have similar statutes.

Clearly, such statutes provide that the beneficiaries of a trust have a right to have the provisions of the trust enforced. Whether that is by virtue of an interest in the property entitling them to enforcement of the trust or merely a personal right against the trustee for the enforcement thereof the authorities seem to be in hopeless disagreement.

On one hand it is held that the trustee is the owner of the land while the cestui que trust owns only the obligation of the trustee to perform the trust. That does not give the cestui any right in the property of the trust but only a right in personam against the trustee. On the other hand it is held that the cestui que trust has an equitable interest in the trust estate held through the trustee.

Many cases have held that the cestui que trust upon the happening of the conditions described in the trust agreement obtains a vested interest in the trust property which he may pass by will or other transfer.

Our legislature has recognized that principle in Section 59–0318 NDRC 1943 which reads at follows:

"The beneficiary of a trust for the receipt of the rents and profits of real property or for the payment of an annuity out of such rents and profits may be restrained from disposing of his interest in such trust during his life or for a term of years by the instrument creating the trust."

The clear implication of this section is that a beneficiary of a trust has an interest in the trust property which he may transfer unless he is expressly restrained from so doing by the instrument creating the trust.

This principle is also supported by the weight of authority.

In Toms v. Williams, 41 Mich. 552, 2 N.W. 814, 821, it is said:

"While there has been some variance among the authorities concerning the legal distinctions between vested and contingent estates, they chiefly agree—First, in favoring the vesting of interests; and, second, in treating future interests as vested, when there is any present interest in the income of the property. * * * The New York cases, which are quite as technical as any others in raising difficulties against perpetuities, are quite clear in favoring construction in aid of vesting."—citing 20 odd cases.

Professor Scott, in his exhaustive discussion of the subject of what estate is passed to the cestui que trust comes to this conclusion:

"I think that the beneficiary of a trust has a property interest in the subject matter of the trust. He has a form of ownership. He has much more than a mere claim against the trustee, a mere chose in action. It must be remembered, however, that the chancellors at the beginning gave him no more than a claim against the trustee, and only gradually gave him proprietory rights. The growth of the trust has been a process of evolution." 1 Scott on Trusts, § 130, p. 683.

Bogert in his discussion of the matter says:

"Most of the decisions under these peculiar statutes either contradict the statutes by holding that the cestui does have some kind of an estate or interests in the trust property, or the cases could have been decided as they were decided without any dependence on the statutes in question. A cestui has no power to mortgage or sell the trust property, if we mean thereby the fee or absolute title thereto, not because the cestui has no interest in such property, but because his power of mortgaging or selling pertains to his own equitable interest alone and the power to alien or mortgage the fee or complete interest in the trust property is vested in the trustee by the terms of the trust and the rules of the law of trusts." 1A Bogert's Trusts and Trustees, § 184, p. 182. See also 54 Am. Jur. Trusts, § 100, p. 92, § 102, p. 93.

The Minnesota statute, Mason Minn.St. 1927, § 8095, M.S.A. § 501.17, vests the whole title in the trustee to the same effect as our statute 59–0314 NDRC 1943. In the case of First & American National Bank of Duluth v. Higgins, 208 Minn. 295, 293 N.W. 585, 594, this matter of the interest of a beneficiary under a trust was described as follows:

"A beneficiary is not prevented from taking a vested interest in a trust by the provisions of Mason Minn.St.1927, § 8095, which vests the whole estate in the trustee in law and equity, subject only to the execution of the trust, and declare that the person for whose benefit the trust was created shall take no estate or interest in the lands but may enforce the performance of the

trust in equity. The construction of the statute is settled by our prior decisions that a beneficiary may take a vested interest in a trust. Our rule is in harmony with that of New York from which our statute was copied and those of other states having similar statutory provisions.

"A beneficiary's right to a beneficial interest under a trust may be vested although such interest is given through the intervention of a trustee. In the case of In re Estate of Sherk, 191 Minn. 143, 253 N.W. 365, we held that a gift in trust of a remainder after a life estate vested in the beneficiaries, citing cases from New York and other jurisdictions. In Fox v. Hicks, 81 Minn. 197, 83 N.W. 538, 50 L.R.A. 663, we held that a gift in trust for the benefit of the testator's granddaughter vested at his death and that in consequence of that fact the gift passed at the granddaughter's death to her heirs and did not revert to the testator's estate. In Merriam v. Wagener, 74 Minn. 215, 77 N.W. 44, 45, we held that, while the title and the dominion over the corpus vested in the trustees and the beneficiary took no title or estate to or in the corpus or the property comprising it, the beneficiary had 'a vested interest in this trust fund' and that the interest had become vested at the testator's death. Our rule is in accord with the overwhelming weight of authority. Tucker v. Bishop, 16 N.Y. 402; Everitt v. Everitt, 29 N.Y. 39; Stevenson v. Lesley, 70 N.Y. 512, 513; Cammann v. Bailey, 210 N.Y. 19, 103 N.E. 824; Perrin v. Lepper, 72 Mich. 454, 40 N.W. 859; Scott v. West, 63 Wis. 529, 562, 24 N.W. 161, 25 N.W. 18; 1 Scott on Trusts, § 129. Numerous cases supporting the rule are collected in an annotation at L.R.A.1915C, 1059."

In Title Ins. & Trust Co. v. Duffill, 191 Cal. 629, 218 P. 14, 21, the court held:

"Harry Duffill (The beneficiary) was vested with an equitable estate and beneficial interest in his mother's property immediately upon her death, with only such legal title lodged in the Los Angeles Trust & Savings Bank as is required for the execution of the testamentary trust." See also Lynch v. Cunningham, 131 Cal.App. 164, 21 P.2d 154, 973.

In Wisconsin under such a statute the court has held the cestui que trust has a beneficial interest in the property of the trust which passes to his heirs by descent. Williams v. Williams, 135 Wis. 60, 115 N.W. 342; Baker v. McLeod's Estate, 79 Wis. 534, 48 N.W. 657. An equitable estate in the cestui que trust has been recognized in spite of the code section identical with ours in the following cases: Lynch v. Cunningham, 131 Cal.App. 164, 21 P.2d 154, 973; Gray v. Union Trust Co., 171 Cal. 637, 640, 154 P. 306, 308; Weston v. Weston, 125 Mass. 268; Crooke v. County of Kings, 97 N.Y. 421, 446; Patton v. Ludington, 103 Wis. 629, 644, 79 N.W. 1073, 74 Am.St.Rep. 910.

The plaintiffs rely upon Penfield v. Tower, supra, and Brett v. St. Paul Trust Co., 49 N.D. 653, 193 N.W. 317, as authority that the cestui que receives no interest or estate in the land. The facts, however, differentiate those cases from the case at bar. In the Penfield case the question was whether the absolute power of alienation of the trust estate was suspended in violation of the North Dakota statutes on perpetuities and the court held that in that case none of the parties could convey " 'an absolute interest in possession' " [1 N.D. 216, 46 N.W. 414]· during the period prescribed by law. In the Brett case the decision was made upon the wording of the will in question. The court said [49 N.D. 653, 193 N.W. 323]:

"It [the will] devised the title in fee to the St. Paul Trust Company, to hold and administer as an active trustee. As such, the duty was imposed to collect the rentals and income, to pay the taxes and other necessary expenses, and to pay over the net rentals and income to one or more persons,

in its judgment and discretion. It possessed the power of sale after the death of Robert and the duty thereupon to pay over the net proceeds of such sales to one or more persons, as shall seem for the best interests of the widow or children of the son, Robert. Otherwise, this trust was subject only to a right of occupancy by the son without rental, conditional upon his choice so to do, and the payment of taxes and assessments by him. Expressly, the son was denied any right of control over the income or rentals of such real estate.

"Thus, it may be seen that no estate was devised to Robert, to his prospective widow or children, either in praesenti or in futuro."

Clearly the limitations of the will in that case prevented the vesting of an estate in the beneficiaries. That was purely a spendthrift trust. The language in the will in the case at bar indicates that the intention of the testator was to vest an estate in beneficiaries and to have the trust turned over to them at the widow's death.

Examination of the will discloses that the title vested in the trustees was for the purpose of managing, investing and reinvesting the trust estate and conveyed all title necessary for that purpose as well as authority to pay the net income and any further amount that might be necessary for her support to his wife until her death or until she remarried. That is in accordance with Section 59–0314 NDRC 1943 and is a title only to provide the trustee with authority to carry out his trust. Section 863 of Civil Code of California is almost identical with our Section 59–0314. The California court has construed this section many times and firmly established the rule that:

"The estate which a trustee takes by virtue of section 863 is * * * only such estate as is required for the execution of his trust." Kaeting v. Smith, 154 Cal. 186, 192, 97 P. 300, 303; Morffew v. San Francisco & S. R. R. Co., 107 Cal. 587, 40 P. 810."

After giving his wife a life estate and the remainder, upon her death or remarriage, to his children, the testator uses this language:

"Provided, however, that if any of my said children shall not have arrived at the age of thirty years at the time of the remarriage or death of my wife, that then and in such case, the *share* of such of my children as have not arrived at the age of Thirty years shall *continue* to be held by my said son and said A. T. Hennig, as trustees, or by the survivor of them in the trust, until such child or children shall respectively reach the age of thirty years, when the *share* of each child arriving at the age of Thirty years, shall be paid to them, and after the remarriage or death of my wife, such child shall receive the net incomes from *their share* of the trust fund quarterly, until arriving at the age of Thirty years." (Emphasis ours.)

The use of this language clearly indicates that the testator intended to pass a vested estate in his children at his death subject only to the life estate. He directs that the trustees shall "continue" to hold "the share" of each child until such child arrived at the age of thirty. Thus he places the ownership of a share of his property in each child. Furthermore, he provides each child shall be paid the income from his share when the life estate ceases. That indicates the intent of the testator to provide for his children an interest in the property and not merely a right against the trustee for the enforcement of the trust.

"It is a familiar canon of construction relating to wills, that the intention of the testator will govern where that intention can be determined and does not violate some rule of law." Aldendifer v. Wylie, 306 Ill. 426, 138 N.E. 143, 145. See also In re Phelps' Estate, 182 Cal. 752, 190 P. 17; In re Fouks' Will, 206 Wis. 69, 238 N.W. 869.

Considering the language of the will and these authorities we have come to the conclusion that the beneficiaries, the daughters and son of the testator, J. Y. Hull, were granted a vested, equitable interest in the property of the trust upon the death of the testator, subject only to the life estate to the mother, and the legal title in the trustees only for the carrying out of the trust.

The next question is whether the beneficiaries of the Hull trust have a right to assign their interest therein before their share is turned over to them. The general rule is that the cestui que trust may alienate his interest as freely as he might a legal estate or interest. Bogert Trusts and Trustees, 1A § 188, p. 192 and cases cited.

"Both in England and the United States today it is clear that the beneficiary of the trust, if he is not under a legal incapacity, can transfer his interest under the trust, unless his interest is made inalienable by the terms of the trust or by statute, or unless his interest is of such a character that it cannot be transferred as for example where a trust is for his personal support, or is a discretionary trust." 1 Scott on Trusts, § 132, p. 699.

In the case at bar the trust is not for the personal support of the remainderman nor does it give the trustee any discretion as to what allowance shall be made to the beneficiaries. There is no provision in the will making any restraint upon the alienation by the beneficiaries of their interest so that Section 59–0318 NDRC 1943 does not apply.

"A court of equity * * * will uphold an assignment of an interest under a will, such as of a contingent bequest and legacy, to take effect on the happening of some future event, as the coming of age of the beneficiaries or the death of some other person." 6 C.J.S., Assignments, § 12, page 1055.

In Berry v. Hartford Nat. Bank & Trust Co., 125 Conn. 615, 7 A.2d 847, the court held that where trust agreements provided that the principal should be divided equally among children of the creator of the trust or their legal heirs when the youngest child should reach the age 30, the children each had a vested remainder interest in the principal which was alienable by them and could be assigned. See also Bridge v. Kedon, 163 Cal. 493, 126 P. 149, 43 L.R.A., N.S., 404; In re Cunningham's Estate, 340 Pa. 265, 16 A.2d 712; 1 A.L.I. Restatement of the Law on Trusts, § 132, p. 338.

In Simes, Law of Future Interests, Vol. 3, § 711, p. 151, it is said:

"Vested interests in reversion and in remainder are everywhere alienable inter vivos. Gaffney v. Shepard, 108 Conn. 339, 143 A. 236. This is true whether the interest be legal or equitable, and whether the subject-matter be land or things other than land. The future interest is alienable whether it is indefeasibly vested, vested subject to complete divestment, or vested subject to partial divestment. No statute has been regarded as necessary to reach this result. The fact that the interest is likely to terminate before it becomes possessory is immaterial, if it is vested. Thus, if land has been given to A for life, remainder to B for life, B has an alienable interest, even though all the facts indicate he will not outlive A."

Bogert, Trusts and Trustees, Vol. 1A, § 188, p. 192, says:

"In the absence of provisions in the trust instrument or statutes to the contrary, the cestui que trust may alienate his interest as freely as he might a legal estate or interest. Rea v. Steamboat Eclipse, (1886) 4 Dak. 218, 30 N.W. 159; Parkhill v. Doggett (1911) 150 Iowa 442, 130 N.W. 411; Lamberton v. Pereles, (1894) 87 Wis. 449, 58 N.W. 776 [23 L.R.A. 824]; Mangan v. Shea (1914), 158

Wis. 619, 149 N.W. 378; Anglo California Nat. Bank of San Francisco v. Kidd (1943), 58 Cal.App.2d 651, 137 P.2d 460; In re Cunningham's Estate (1940) 340 Pa. 265, 16 A.2d 712. The law, however, is perfectly settled, that the estate of the cestui que trust may be conveyed as well as any other. Elliott v. Armstrong, (1829) 2 Blackf. (Ind.) 198, 208. *He may join with the trustee and transfer the whole title, legal and equitable.*"

In the A.L.I. Restatement of the Law of Perpetuities, Vol. 4, Ch. 13, § 64, p. 2792, it is said:

"In North Dakota, since 1877, the statute has been in the California form providing that the interest of the beneficiary of a trust 'for the receipt of the rents and profits of real property' is inalienable only if the instrument creating the trust so provides, * * *" See also Grand Rapids Trust Co. v. Herbst, 220 Mich. 321, 190 N.W. 250; Eggleston v. Swartz, 145 Wis. 106, 129 N.W. 48; Ford v. Yost, 299 Ky. 682, 186 S.W.2d 896, 162 A.L.R. 149; Maddox v. Keeler, 296 Ky. 440, 177 S.W. 2d 568, 162 A.L.R. 578; 41 Am.Jur. Perpetuities and Restraints on Alienations, §§ 21, 22, 23, and 24.

In Fleming v. Casady, 202 Iowa 1094, 211 N.W. 488, it is said:

"Beneficiaries of testamentary trust may assign interests, where not prohibited by will." See also Jones v. Jones, 111 Md. 700, 77 A. 270; Berry v. Hartford Nat. Bank & Trust Co., 125 Conn. 615, 7 A.2d 847.

There is no provision in the Hull will in restraint of the alienation of their interests by the beneficiaries.

Whatever technical name is given to the interest of the beneficiaries in the instant case they had the right to dispose of and sell that interest. This they did by a quitclaim deed to the defendant. Now the plaintiffs claim title as the trustees of the Hull trust. The question for decision is whether the title of the defendant derived from the quitclaim deed of the heirs including the two trustees is superior to the claim of title by the trustees derived through the Hull will.

The evidence shows that J. Y. Hull obtained a sheriff's deed to this real property Jan. 13, 1925, by the foreclosure of a homesteader's mortgage in which he had invested. He had paid taxes for three more years. Then no more taxes were paid on the land for 19 years prior to the issuance of the quitclaim deed in question. The presumption is that an owner of land knows that the law provides for the assessment and levy of taxes against his land. In 1930 the premises were sold to McKenzie County for the non-payment of the 1929 taxes. While there was a flaw in those proceedings by reason of the use of the wrong initial in the owner's name in the notice of the expiration of the time for redemption, there is no showing that the service of that notice had not been made upon J. Y. Hull or the trustees or that they had not received notice of the sale. Furthermore, they are presumed to know that the law requires such sale for the non-payment of taxes. There is no showing that they made any inquiry or attempt to redeem or repurchase the land or to pay any taxes. Auditor's tax deed to the county was issued on Oct. 1, 1940 after which the county took possession of the land.

In 1947 the defendant purchased the premises from the county and issued his check in payment thereof. He had had some experience in buying lands from the county and learned that to perfect a tax title it was wise to have a quitclaim deed from the prior owner. He found that the records showed J. Y. Hull as the owner of this land prior to tax deed. Defendant then wrote Mr. Hull offering $35 for a quitclaim deed. He received an answer from J. Y. Hull's son, Lathrop W. Hull to the effect that J. Y. Hull was dead and making an inquiry regarding the location of the land "to make sure it is land we have a right to quitclaim and not land my

father looked after for someone else." Then the letter continued:

"An action to quiet title would cost you about $150.00, Mr. Rolfsrud, and for me to get you a proper quitclaim deed entails some expense while your offer of $35.00 would be fair under most circumstances, it is not quite enough here. If you wish to pay $50.00 to my mother I think we can fix it up. Please, when you answer, let me know if you want a quitclaim from my father's estate signed by the estate representatives, or if a quitclaim signed by my mother, my two sisters and myself and wife would be sufficient. *Those mentioned are the only ones from whom you would need a deed to clear the title."* (Emphasis ours.)

In response thereto defendant Rolfsrud sent a check for $50 payable to Lathrop W. Hull, dated Nov. 25, 1947, with the instruction *"to send a deed that will properly convey whatever interest they had to me."* (Emphasis ours.) That check was endorsed by Lathrop W. Hull and endorsed and cashed by Esther V. Hull. Thereafter defendant received the quitclaim deed in question signed by the widow, the two daughters and the son of J. Y. Hull and his wife, "his only heirs-at-law." The deed does show that no warranties were made by the grantors and that it was given to clear tax title.

The defendant filed his quitclaim deed in the register of deeds office in McKenzie county as soon as he received it and then went to the county auditor for his county deed. He was then informed that an error had been discovered in the tax proceedings leading up to tax deed in the use of the wrong initial and that "to void that certain auditor's tax deed" the county had issued a quitclaim deed back to J. Y. Hull. The auditor then returned to Rolfsrud the amount he had paid for the land. Thereupon the defendant paid all the taxes against the land and took possession thereof.

Plaintiffs argue that this quitclaim deed was given merely to cure tax title and that McKenzie county had no tax title so that his quitclaim deed passed nothing. A quitclaim deed given to cure a tax title passes whatever interest the owner may have in the premises. If the tax deed is good he has no interest except the right of repurchase as long as the county had title. If the tax deed is void he has the whole interest in the premises subject to the taxes for which the premises have been sold. The quitclaim deed in question was issued for just that purpose. It was used to cure whatever error there was in the tax proceedings, and to pass whatever interest the grantors had in the land to Mr. Rolfsrud. That is just what the grantors intended it should do. The fact that the county considered its auditor's tax deed void was not proof that it was void and was anyhow of no more effect than would a court decree finding the tax deed void. In either event the quitclaim deed would pass the whole title of the grantors subject only to the taxes due.

A quitclaim deed generally covers all the interest the grantor has in the property described. 16 Am.Jur. Deeds, §§ 330, 331, p. 624.

In re Disston's Estate, 349 Pa. 129, 36 A.2d 457, 458, 459, the court said:

"The words of a grant are to receive a reasonable construction, and one *that will accord with the intention of the parties;* and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made. Connery v. Brooke, 73 Pa. 80, 83." (Emphasis ours.)

Lathrop W. Hull was a lawyer. He was asked by the defendant to give such deed as would convey all the title to this property of those interested in the estate of J. Y. Hull. At that time on the state of the record in North Dakota the only ones having title in this North Dakota land were the legal heirs. Lathrop W. Hull further

indicated that there was no intention to probate the will in North Dakota; that "for the value of this land it did not pay him to have the estate closed in North Dakota." A quitclaim deed such as was given to the defendant would pass the title in cases of intestacy under the record of the title in McKenzie County.

 This land had come to J. Y. Hull through a speculative investment in early North Dakota mortgages at a cost of only $597. The court will take judicial notice of the fact that from 1930 to 1940 a great depression existed in North Dakota and that even many North Dakota people abandoned their lands in the western part of the state. That the low valuation of the land in that part of the state existed even in 1947 as shown by the fact that the 1948 tax on the premises in question amounted to only $7.58. Mr. Hull's investment was not large and it is easily understood why Lathrop W. Hull, as trustee and beneficiary of the trust, did not think it would pay him to have the estate probated in North Dakota. When it came to dispose of any equity the estate might have in that land he preferred to do it by a quitclaim from the legal heirs.

The ancillary proceedings for the probate of the Hull will were not commenced in McKenzie County until Feb. 23, 1951, about three years and three months after the deed in question was issued. The original inventory of the estate, dated June 15, 1951, lists as the only property of the estate a land contract dated May 17, 1927, between J. Y. Hull, party of the first part and one Bryant Kellogg, party of the second part, upon which a balance of $700 was claimed as due. Proceedings were had authorizing the conveyance of that land. When Mr. Rolfsrud gave an oil lease in this land after those proceedings were commenced he was advised to get a deed from the trustees also. He wrote Lathrop W. Hull and sent him $25 for such deed. Mr. Hull cashed the check but never furnished the trustee deed. Then on Nov. 15, 1951, a petition to file a supplemental inventory of the estate in North Dakota was filed. That petition contains a description of many tracts of land in McKenzie County. Oil rights against the United States Government were claimed in some of those tracts. The last item therein described covers the premises here in question.

Thus it appears that from April 1928, the time of J. Y. Hull's death, until February 1951, no proceedings were taken or contemplated for the probate of the estate of J. Y. Hull in North Dakota. A foreign will is of no effect in North Dakota until probated here in accordance with Sections 30–0520 and 30–0521 NDRC 1943. The evidence indicates that the proceedings were started only to cover an old land contract under which it became necessary for the estate to furnish title. It is evident that these plaintiffs both as trustees and as beneficiaries of the trust had no faith in this North Dakota land and had abandoned it. Clearly the heirs, including the two trustee heirs who signed the quitclaim deed to the defendant were in good faith and intended to convey their complete title to the defendant. There was no intent on their part at that time to probate the estate in North Dakota. Only after oil was discovered in North Dakota did they change their minds.

 The Hull will authorized the sale of portions of the trust estate when necessary to support the widow. Proceeds of such sales were turned over to her. Since the sale was not questioned for three years and three months it would be presumed to have been made under that power and provision of the will. Griffin v. Griffin, 141 Ill. 373, 31 N.E. 131. That sale was also upon the authority of the widow who held the life estate and all the beneficiaries as they all signed the deed. That in effect compelled the termination of the trust as far as this piece of North Dakota land was concerned. The purpose of the trust as far as that property was concerned was fulfilled. Vol. 2 A.L.I. Restatement of the Law of Trusts, § 337, p. 1021. The duties of the trustees owed to the beneficiaries had ceased. The beneficial estates of the cestui que trusts had been sold and transferred to the defendant, Rolfsrud.

That also included the beneficiary interests of the trustees. One of the plaintiffs, Lathrop W. Hull, actually arranged and consummated the sale. The other plaintiff, Esther V. Hull, received the benefits of the sale in accordance with the provisions of the will. All of the parties beneficially interested in this trust have participated in this sale' and by their acts are clearly estopped from making any objection to it or against the trustees. 54 Am. Jur. Trusts, § 337, p. 264, 4 Bogert, Trusts and Trustees, § 944, p. 156. The beneficiaries are also precluded from reaching the property so transferred in the hands of the transferee, Mr. Rolfsrud. 2 Scott on Trusts, § 315, p. 1711.

In 2 Restatement of the Law on Trusts, § 315, p. 952, the principle is laid down that "if the trustee in breach of trust transfers trust property to a third person, and the beneficiary by his consent to transfer is precluded from holding the trustee liable for the breach of trust in making the transfer, the third person takes the property free of the trust."

It would seem inescapable that where, as in this case, the trustees and beneficiaries all join in the transfer to a third party, although the trustees are not specifically designated as such, and the transfer violates no provision of the trust, the third person, defendant Rolfsrud, takes the property free of the trust.

Even if it were held that the trustees still had the bare legal title the trustees could only assert that title for the benefit of the assignee of the beneficiaries who is defendant Rolfsrud.

We, therefore, hold that the title obtained by the defendant through the quitclaim deed of the heirs and beneficiaries, two of whom also were the plaintiff trustees, is superior to any claim the plaintiffs have as trustees under the Hull will.

The judgment of the District Court is affirmed.

MORRIS, C. J., and SATHRE and BURKE, JJ., concur.

JOHNSON, J., did not participate.